**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| DANIEL GRIMM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. _____ |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| ADKINS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

### The Parties

1.      Plaintiff Daniel Grimm ("Mr. Grimm") was, at all times relevant, a resident of Sussex County, Delaware.  Mr. Grimm is currently a resident of Monroe County, Florida.  At all relevant times, as described more fully herein, Mr. Grimm was 63 years old.

2.      Defendant Adkins, Incorporated ("Adkins") is a Delaware corporation with its principal place of business at 37232 Lighthouse Road, Unit 113, Selbyville, Sussex County, Delaware 19975.  Upon information and belief, Adkins employs between 30 and 50 employees.

3.      Adkins is a family owned business that owns and operates a camp ground, liquor stores, a marina, housing projects, and a shopping center.

4.      Mr. Grimm filed a Charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 7, 2017.  In that Charge, he alleged disability discrimination, failure to accommodate his disabilities, hostile work environment based upon his disabilities, retaliation for asking for accommodations, and age discrimination.  The Charge Number 530-2017-01849.  A Right to Sue Letter was requested, and it was mailed by the EEOC to Mr. Grimm on September 25, 2017.

5.      Mr. Grimm also filed Charge of Discrimination with the Office of Anti-Discrimination of the Delaware Department of Labor on April 13, 2017.  The bases of discrimination were substantially the same as those filed with the EEOC.  The Charge Number was GRI030917X/17C-2017-00382C.  A Right to Sue Letter was requested from the Delaware Department of Labor on October 11, 2017.

## Background

6.      Mr. Grimm began working with Adkins in 2002 or 2003.  When he began working for Adkins, he already had a permanently or semi-permanently injured right hand.

7.      He began as a maintenance worker and was promoted to a maintenance supervisor. As such he had 10-12 employees working under him during the peak season and 2-4 employees working under him during the winter season.  Mr. Grimm would perform work for any of the business interests owned by Adkins and detailed above in Paragraph 3.

8.      During his time with Adkins, Mr. Grimm had not been written up nor had he been given any verbal warnings regarding any serious performance deficiency.  In fact, he had received a letter of commendation from his previous supervisor, Michael Elliott.

9.      When he began with Adkins, he was making $11.00 per hour.  At all times relevant, as described in more detail herein, Mr. Grimm was making $22.03 per hour.

10.     The person to whom Mr. Grimm reported changed over time, but, during the summer of 2016, he reported to Kenny Stevens ("Mr. Stevens").

## Mr. Grimm's On-The-Job Shoulder Injury & Adkins' Request He Defer Surgery

11.     Mr. Grimm injured his left shoulder on the job on December 17, 2015.  He was pulling out roots so he could dig a sewer line.  After physical therapy and conservative care, he was ultimately told in March 2016 that he needed surgery.

12.     Mr. Stevens and Andrew Adkins, one of the owners of Adkins, asked Mr. Grimm to defer the surgery until the winter season.  Mr. Grimm's doctor, Dr. Bontempo at Atlantic Orthopedics in Berlin, Maryland, told Mr. Grimm he could defer the surgery if Mr. Grimm worked within certain restrictions.  (*See* Ex. A.)  Mr. Grimm therefore deferred having the surgery.  Mr. Grimm gave Adkins the physician's note with restrictions dated March 1, 2016, on his first day at work after March 1, 2016.  All work notes were provided to Cindy Collins at Adkins.

### Mr. Grimm's Shoulder Injury Worsens

13.     In May 2016, the problems with Mr. Grimm's left shoulder worsened.  The worsened condition was the result of Mr. Grimm being forced to perform work in excess of his limitations for Adkins.  On or about May 19, 2016, Mr. Grimm saw Dr. Bontempo who added more restrictions and limitations on what Mr. Grimm could do.  (*See* Exhibit A.)  Mr. Grimm gave Adkins the work notes dated May 19, 2016, on his first day at work after May 19, 2016.  He gave the note to Cindy Collins.

14.     Mr. Grimm informed Mr. Stevens of what he was being told by his physician.  Mr. Stevens told Mr. Grimm to "take it easy."

15.     But Mr. Stevens' actions contradicted that directive.  Mr. Stevens was pushing for projects to be completed quickly, which was forcing Mr. Grimm to work harder despite his restrictions and limitations.  In particular, Mr. Stevens wanted projects completed at the campground before and during the 4th of July weekend.

16.     In addition, Mr. Grimm would line up tech workers to assist him ahead of performing a project on which he would need assistance due to his limitations and restrictions. When the tech worker failed to show up to assist on the project, Mr. Grimm would call the worker only to find out that Mr. Stevens had sent the tech worker to work on another project.

3

**Adkins Hires Mr. Grimm's Replacement**

17.     In or about June 2016, Adkins hired Willie McCoy, a man who was approximately 50 years old.  Mr. Stevens told Mr. Grimm that Willie was his replacement when Mr. Grimm retired.  Mr. Grimm responded he had no plans of retiring, and Mr. Stevens then said that Willie would be Mr. Grimm's assistant.  Nonetheless, Mr. Stevens instructed Mr. Grimm to train Willie to perform Mr. Grimm's job.

18.     After hiring Willie, Mr. Stevens hired two new maintenance workers.  This was unusual in that Mr. Grimm had traditionally hired his own crew and set their schedules.  These three new hires bypassed Mr. Grimm and reported directly to Mr. Stevens.

**The Last Week Of Mr. Grimm's Employment**

19.     On or about June 24, 2016, Mr. Grimm had purchased lunch for his crew.  Mr. Stevens called on the radio and demanded that a tractor trailer of chairs be unloaded.  Mr. Grimm responded no one was available.  Mr. Stevens instructed Mr. Grimm to drive the large red tractor with forks over to the site where the tractor trailer was located even though the act of driving that tractor was prohibited by Mr. Grimm's medical restrictions and limitations.  Nonetheless, Mr. Stevens insisted Mr. Grimm drive the tractor over there.  Mr. Grimm complied by driving the tractor to the tractor trailer.  Mr. Grimm told Mr. Stevens he was not supposed to be driving the tractor.  Because of that, Mr. Stevens told him to go home.

20.     On Monday, June 27, 2016, Mr. Stevens called Mr. Grimm asking if Mr. Grimm was coming back to work.  Mr. Grimm indicated he was not because he needed surgery on his shoulder.  Specifically, Mr. Grimm told Mr. Stevens that the latter's demands were making Mr. Grimm's shoulder worse.  This was interfering with Mr. Grimm's life and sleep.  Mr. Stevens pleaded with Mr. Grimm to come back and work through July 4 and then things would ease up.

Mr. Stevens practically begged Mr. Grimm to return to work.  Mr. Grimm finally agreed to come

back and work through the July 4 weekend.

21.     Within the next week, Mr. Grimm and his crew opened up 100 sites for the July 4

weekend and got the work done although it was physically very difficult for him to do so.

22.     After customers left following July 4, Mr. Stevens began micro-managing Mr.

Grimm and Mr. Stevens removed some of Mr. Grimm's managerial tasks.

**Adkins Terminates Mr. Grimm**

23.     On July 6, 2016, Mr. Stevens took the tech member of Mr. Grimm's crew away

from the crew.  This meant that Mr. Grimm was forced to complete all of the mechanical and sewer

work for the day against his medical restrictions and limitations.

24.     Also on July 6, 2016, Mr. Stevens called Mr. Grimm on the radio.  Mr. Stevens

asked that Mr. Grimm and his crew to come to Mr. Steven's office.  Mr. Stevens announced over

the radio that he was going to tell each member of the crew what he was going to do the following

day.  This was unusual in that Mr. Stevens did not typically direct the day-to-day activities of Mr.

Grimm's crew members.

25.     At the meeting on July 6, 2016, Mr. Stevens asked what Mr. Grimm was planning

to do for July 7, 2016.  Mr. Grimm replied that he needed his tech back because he was doing work

he should not be doing in light of his medical restrictions and limitations.

26.     At approximately 3:40 p.m. on July 6, 2016, Mr. Stevens told Mr. Grimm to get

him a list of sites to work on for the following day.  A contractor was scheduled to start work on

those sites at approximately 7:00 a.m. the next day.

27.     Mr. Grimm replied that he was about to leave for the day and had plans that evening.

Mr. Stevens said Mr. Grimm could not leave simply because it was 4:00 p.m.  Mr. Grimm asked

5

by when the task needed to be completed, and Mr. Stevens said 7:00 a.m. the following day. Although it did not come up in the conversation, Mr. Grimm planned to come in at 6:00 a.m. the following day to complete the task.

28.     Mr. Stevens told Mr. Grimm that the former could work the latter as much as the former desired.  Mr. Grimm responded that his work arrangement had always been that he would work 40 hours per week plus in emergency situations.  Mr. Grimm said he wanted to speak to Andrew Adkins if his work arrangement was going to change.  Mr. Stevens said he did not need to worry about that because Mr. Grimm was terminated.

**Mr. Grimm's Contacts With The Adkins Family**

29.     On Friday, July 8, 2016, Andrew Adkins called Mr. Grimm.  Mr. Adkins indicated he did not want to get into a conflict between Mr. Stevens and Mr. Grimm.  Mr. Adkins set up a meeting between Mr. Grimm and himself on Monday, July 11, 2016, at 10:00 a.m.

30.     Mr. Grimm called Junis Adkins on July 8 or July 9.  Jerry and Junis Adkins, Andrew Adkins' parents, had created the RV campground, and most of Mr. Grimm's employment with Adkins was under the supervision of Jerry and Junis Adkins.  Jerry Adkins had since passed away. Junis Adkins was disturbed about Mr. Grimm's termination and indicated there had been multiple problems with Mr. Stevens.  Junis Adkins promised to speak to Andrew Adkins.

31.     On Monday, July 11, 2016, Mr. Grimm met with Andrew Adkins.  There was no animosity in the meeting.  Mr. Grimm returned the keys and credit cards belonging to Adkins.  Mr. Grimm said he did not want to work there anymore given how he had been treated by Mr. Stevens. Mr. Grimm requested a severance package.  Andrew Adkins agreed to give Mr. Grimm a severance package and indicated he would get back to Mr. Grimm in a couple of days about the details. Andrew Adkins further indicated he would not take action to oppose Mr. Grimm's workers'

compensation claim or his unemployment claim.  Finally, Andrew Adkins said that when Mr. Grimm resolved his shoulder injury, Andrew Adkins would attempt to find a position for Mr. Grimm at his liquor store.

32.     In addition to being an employee of Adkins, Mr. Grimm also worked as a sub-contractor performing concrete work.  He made approximately $35,000 in 2015 performing this work.  In addition to being unable to perform that work due to his injury, Andrew Adkins banned Mr. Grimm from the premises on July 11, 2016.  In other years, ninety percent of Mr. Grimm's concrete work came from guests who wanted concrete work at their sites within the RV park owned by Adkins.

33.     On August 1, 2016, Mr. Grimm emailed Andrew Adkins inquiring about the status of a severance package and Andrew Adkins indicated it would be finalized by the week's end.

34.     On August 10, 2016, Mr. Grimm text messaged Andrew Adkins asking about the status.  Mr. Grimm sent another text subsequently.

35.     On August 29, 2016, Mr. Grimm underwent surgery on his left shoulder.  Contrary to what Andrew Adkins had promised, Mr. Grimm had to fight with Adkins to get the shoulder surgery covered by workers' compensation.  After his termination, Mr. Grimm's contact regarding the open workers' compensation claim refused to communicate with Mr. Grimm or his physician.  Mr. Grimm ultimately had to retain counsel for his workers' compensation claim.

36.     Also, contrary to Andrew Adkins' statements to Mr. Grimm, Adkins opposed Mr. Grimm's unemployment case.  Adkins claimed Mr. Grimm was terminated for swearing at Mr. Stevens and giving Mr. Stevens a hard time.  Adkins also claimed Mr. Grimm had not completed a necessary service call.  Mr. Grimm denies these pretextual reasons given by Adkins for his termination.

37.     In addition to the discrimination against Mr. Grimm, Adkins discriminated against Carl Reinhart.  Mr. Reinhart was a tech worker under Mr. Grimm, who is approximately 60 years old.  Mr. Reinhart was also injured on the job at Adkins.  When Adkins decided it was going to lay off employees, Mr. Reinhart was laid off in or about December 2016.  Upon information and belief, Mr. Reinhart was recently informed by Adkins he would not be brought back to work for the 2017 season.  Additionally, upon information and belief, the employees at Adkins general store at the RV campground who were in their seventies were not hired to return to work for the 2017 season.

38.     As a result of the foregoing, Mr. Grimm suffered the following damages:

a.   Lost wages due to his termination (front and back pay);

b.   Anxiety, emotional harm, mental distress, and mental anguish; and

c.   General disruption to life.

## COUNT I – DISABILITY DISCRIMINATION

39.     Plaintiff reincorporates all of the foregoing allegations as if they are contained in this Count.

40.     Mr. Grimm suffered from a disability when he began working for Adkins. Specifically, Mr. Grimm had a permanently or semi-permanently injured right hand.

41.     While working for Adkins, in December 2015, Mr. Grimm injured his left shoulder, and that injury ultimately required surgery.

42.     Both the injuries to his right hand and his left shoulder, individually and/or collectively, are disabilities under the Americans with Disabilities Act ("ADA").

43.     Adkins was aware of Mr. Grimm's disabilities to his right hand and left shoulder.

44.     Mr. Grimm was capable of performing the essential duties of his job with the accommodations.  Specifically, if members of his crew had not been taken away from him, he could have fulfilled the duties his job required.

45.     Mr. Grimm was terminated by Adkins in the midst of a dispute between Mr. Grimm and Mr. Stevens about Mr. Grimm the latter's injuries, medical restrictions, and need for certain crew members to help him with work due to his shoulder injury.  Given the timing of the termination in the midst of this dispute, the termination was based upon Mr. Grimm's disability.

46.     As a result of the discrimination based upon Mr. Grimm's disability, Mr. Grimm sustained the damages identified in Paragraph 38.

47.     This willful, intentional, and unlawful retaliation violates the laws and regulations of both the United States, including, without limitation, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 12101, *et seq.*, and the State of Delaware, including, without limitation, 19 Del. C. § 710, *et seq.* and 19 Del. C. § 720, *et seq.*

WHEREFORE Plaintiff Daniel Grimm respectfully requests this Court:

A.     Enter judgment in his favor and against Defendant Adkins, Inc.;

B.     Award him special damages, including back pay and front pay, as he can prove, compensatory damages, and punitive damages;

C.     Award him costs and attorney's fees;

D.     Award him pre- and post-judgment interest; and

E.     Grant such other relief as the Court deems appropriate.

## COUNT II – HOSTILE WORK ENVIRONMENT (DISABILITY)

48.     Plaintiff reincorporates all of the foregoing allegations as if they are contained in this Count.

49.     As Mr. Grimm had been with Adkins for a significant amount of time, was a manager, and was practically begged to return to work in late June/early July despite his injury, Mr. Grimm was qualified for his job.

50.     Mr. Grimm's right hand and left shoulder injuries are disabilities under the ADA.

51.     Mr. Grimm was subject to unwelcome harassment when he was, among other things, told or requested by Mr. Stevens to engage in various physical tasks that contradicted his medical restrictions and limitations.

52.     Upon information and belief and in light of the timing, this harassment was based upon his inability to complete tasks without Mr. Grimm's requests for additional crew members to help him with physically demand tasks.

53.     The harassment was severe and/or pervasive such that it altered his conditions of employment and created an abusive working environment. For example, Mr. Grimm was sent home on or about June 24, 2016, when he said Mr. Steven's request that he operate a tractor violated his medical restrictions. Mr. Grimm did not plan on returning to work until after his surgery because Mr. Stevens continually pushed Mr. Grimm beyond his medical limitations. But Mr. Stevens begged him to return with a promise conditions would improve. Mr. Grimm returned and conditions remained constant at best and deteriorated at worst. He was ultimately terminated as part of the pattern of ongoing harassment about his disability.

54.     Mr. Stevens was a management level employee for Adkins. Adkins therefore had constructive knowledge of the harassment and failed to take any steps to stop Mr. Stevens from harassing Mr. Grimm.

55.     As a result of the harassment, Mr. Grimm suffered the injuries identified in Paragraph 38.

56.     This willful, intentional, and unlawful retaliation violates the laws and regulations of both the United States, including, without limitation, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 12101, *et seq.*, and the State of Delaware, including, without limitation, 19 Del. C. § 710, *et seq.* and 19 Del. C. § 720, *et seq.*

WHEREFORE Plaintiff Daniel Grimm respectfully requests this Court:

A.     Enter judgment in his favor and against Defendant Adkins, Inc.;

B.     Award him special damages, including back pay and front pay, as he can prove, compensatory damages, and punitive damages;

C.     Award him costs and attorney's fees;

D.     Award him pre- and post-judgment interest; and

E.     Grant such other relief as the Court deems appropriate.

## COUNT III – FAILURE TO ACCOMMODATE

57.     Plaintiff reincorporates all of the foregoing allegations as if they are contained in this Count.

58.     As Mr. Grimm had been with Adkins for a significant amount of time, was a manager, and was practically begged to return to work in late June/early July despite his injury, Mr. Grimm was qualified for his job.

59.     Mr. Grimm's right hand and left shoulder injuries are disabilities under the ADA.

60.     Mr. Grimm was capable of performing the essential duties of his job with the accommodations.  Specifically, if members of his crew had not been taken away from him, he could have fulfilled the duties his job required.

61.     Mr. Grimm was terminated by Adkins in the midst of a dispute between Mr. Grimm and Mr. Stevens about Mr. Grimm the latter's injuries, medical restrictions, and need for certain

crew members to help him with work due to his shoulder injury. Given the timing of the termination in the midst of this dispute, the termination was based upon Mr. Grimm's disability.

62. Mr. Grimm could have continued to work and perform the duties of his job had his request for crew members been honored. Adkins, through its agent Mr. Stevens, did not engage in any interactive or good faith process regarding Mr. Grimm's disabilities.

63. Instead and notwithstanding knowledge of both of Mr. Grimm's disabilities, Mr. Stevens took a necessary crew member away from Mr. Grimm. Mr. Stevens made Mr. Grimm operate equipment Mr. Stevens knew violated Mr. Grimm's medical restrictions. Mr. Grimm made his medical restrictions and needs known to Mr. Stevens.

64. But for Mr. Stevens disregard of Mr. Grimm's known medical needs and restrictions, Mr. Grimm could have continued performing the duties with the help of certain crew members. Had Mr. Grimm's reasonable accommodation been met, Mr. Grimm likely would not have been terminated.

65. As a result of the failure to accommodate, Mr. Grimm suffered the injuries identified in Paragraph 38.

66. This willful, intentional, and unlawful retaliation violates the laws and regulations of both the United States, including, without limitation, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 12101, *et seq.*, and the State of Delaware, including, without limitation, 19 Del. C. § 710, *et seq.* and 19 Del. C. § 720, *et seq.*

WHEREFORE Plaintiff Daniel Grimm respectfully requests this Court:

A. Enter judgment in his favor and against Defendant Adkins, Inc.;

B. Award him special damages, including back pay and front pay, as he can prove, compensatory damages, and punitive damages;

C.    Award him costs and attorney's fees;

D.    Award him pre- and post-judgment interest; and

E.    Grant such other relief as the Court deems appropriate.

## COUNT IV – AGE DISCRIMINATION

67.    Plaintiff reincorporates all of the foregoing allegations as if they are contained in this Count.

68.    Mr. Grimm was born in 1952.  At all times relevant, Mr. Grimm was over the age of forty.

69.    As Mr. Grimm had been with Adkins for a significant amount of time, was a manager, and was practically begged to return to work in late June/early July despite his injury, Mr. Grimm was qualified for his job.

70.    Mr. Grimm was terminated by Adkins on or about July 6, 2016.

71.    As Mr. Grimm was 63 years old in June 2016, Mr. McCoy, at 50, was substantially younger than Mr. Grimm when Mr. McCoy was hired as Mr. Grimm's replacement.  Such an age gap permits an inference that Mr. Grimm's termination was based upon his age.

72.    As a result of the discrimination, Mr. Grimm suffered the injuries identified in Paragraph 38.

73.    This willful, intentional, and unlawful retaliation violates the laws and regulations of both the United States, including, without limitation, 42 U.S.C. § 2000e, *et seq.*, and 29 U.S.C. § 621, *et seq.*, and the State of Delaware, including, without limitation, 19 Del. C. § 710, *et seq.*

WHEREFORE Plaintiff Daniel Grimm respectfully requests this Court:

A.    Enter judgment in his favor and against Defendant Adkins, Inc.;

B.      Award him special damages, including back pay and front pay, as he can prove, compensatory damages, and punitive damages;

C.      Award him costs and attorney's fees;

D.      Award him pre- and post-judgment interest; and

E.      Grant such other relief as the Court deems appropriate.

## COUNT V - RETALIATION

74.      Plaintiff reincorporates all of the foregoing allegations as if they are contained in this Count.

75.      Mr. Grimm engaged in protected activity when he, among other things, provided his physician's note to Ms. Collins, informed Mr. Stevens of what his physician was saying regarding his medical condition, and informed Mr. Stevens he could not drive the tractor due to his medical restrictions.

76.      Mr. Grimm was terminated by Adkins in the midst of a dispute between Mr. Grimm and Mr. Stevens about Mr. Grimm the latter's injuries, medical restrictions, and need for certain crew members to help him with work due to his shoulder injury.  Given the timing of the termination in the midst of this dispute, the termination was based upon retaliation for Mr. Grimm's protected activity of informing the company of his medical needs.

77.      Mr. Grimm made his worsening shoulder prognosis known to Adkins no later than May 19, 2016.  Mr. Grimm was sent home after he informed Mr. Stevens that driving the tractor violated his medical restrictions on June 24, 2016.  Mr. Grimm's tech crew member was taken away on July 6, 2016, and Mr. Grimm was terminated the same day.  Thus, there is a specific causal nexus between Mr. Grimm making the company aware of his medical needs and limitations and his termination.

78.     As a result of the retaliation, Mr. Grimm suffered the injuries identified in Paragraph 38.

79.     This willful, intentional, and unlawful retaliation violates the laws and regulations of both the United States, including, without limitation, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 12101, *et seq.*, and the State of Delaware, including, without limitation, 19 Del. C. § 710, *et seq.* and 19 Del. C. § 720, *et seq.*

WHEREFORE Plaintiff Daniel Grimm respectfully requests this Court:

A.     Enter judgment in his favor and against Defendant Adkins, Inc.;

B.     Award him special damages, including back pay and front pay, as he can prove, compensatory damages, and punitive damages;

C.     Award him costs and attorney's fees;

D.     Award him pre- and post-judgment interest; and

E.     Grant such other relief as the Court deems appropriate.

### COUNT VI – VIOLATION OF 19 DELAWARE CODE SECTION 2365

80.     Plaintiff reincorporates all of the foregoing allegations as if they are contained in this Count.

81.     Mr. Grimm's shoulder injury occurred while working in the course and scope of his employment for Adkins.

82.     When Mr. Grimm was terminated, he tried to speak with Mr. Adkins a few days later.  During the conversations that followed, Mr. Adkins indicated he would not oppose Mr. Grimm's Workers' Compensation claim.  That turned out to not be true.  The worsening of Mr. Grimm's shoulder injury which necessitated surgery shortly before his termination and Mr. Adkins' concern with the Workers' Compensation claim suggest Mr. Grimm's termination was

15

motivated in whole or in part because he was pursuing a Workers' Compensation claim for his shoulder injury.

83.     Following his surgery, Mr. Grimm is capable of returning to his job with Adkins.

84.     As a result of the discrimination, Mr. Grimm suffered the injuries identified in Paragraph 38.

WHEREFORE Plaintiff Daniel Grimm respectfully requests this Court:

A.     Enter judgment against Adkins, Inc., and in his favor;

B.     Restore Daniel Grimm to employment with Adkins, Inc., and the position, privileges, rights, and/or other conditions of employment denied by Adkins, Inc.'s, actions;

C.     Award Mr. Grimm his lost compensation and damages from the time of his termination to the present, including any benefits;

D.     Award him damages for the harm caused to his reputation;

E.     Award him pre- and post-judgment interest;

F.     Award him costs and attorney's fees in prosecuting this action;

G.     Order Adkins, Inc., pay a penalty to the Workers' Compensation Fund pursuant to 19 Delaware Code Section 2365; and

H.     Grant such other relief as the Court deems appropriate.

## COUNT VII – COBRA VIOLATION

85.     Plaintiff reincorporates all of the foregoing allegations as if they are contained in this Count.

86.     When Mr. Grimm was terminated by Adkins, he experienced a "qualifying event" as contemplated by 29 U.S.C. § 1163(2).  He was not terminated for gross misconduct.

87.     Despite Mr. Grimm's qualifying event, he was not given any notice of his rights to continue coverage under Adkins' health insurance plan under the notice provision of the Consolidated Omnibus Budget Reconciliation Act of 1986 ("COBRA").

88.     Upon information and belief, Adkins was the plan administrator of Adkins' group health plan for its employees.  As such, Adkins had a duty to provide notice to Mr. Grimm pursuant to 29 U.S.C. § 1166 of his rights under COBRA within a maximum of 44 days of the date of his termination.

89.     Alternatively, Adkins had a duty to notify the plan administrator of Mr. Grimm's termination and failed to do so within thirty days as required by 29 U.S.C. § 1166.

WHEREFORE Plaintiff Daniel Grimm respectfully requests this Court:

A.      Enter judgment in his favor and against Defendant Adkins, Inc.;

B.      Award him $100 per day that Defendant Adkins, Inc., failed to provide him with his notice of COBRA benefits pursuant to 29 U.S.C. § 1132;

C.      Award him costs and attorney's fees pursuant to 29 U.S.C. § 1132(g);

D.      Award him pre- and post-judgment interest; and

E.      Grant such other relief as the Court deems appropriate.

**CURLEY, DODGE, FUNK, & STREET, LLC**

  /s/ Patrick C. Gallagher
Patrick C. Gallagher, Esq. (DE Bar 5170)
250 Beiser Blvd., Suite 202
Dover, DE  19904
(t) 302.674.3333
(f) 302.674.3335
pgallagher@curleydodgefunk.com
*Attorney for Plaintiff*

Date:  December 22, 2017